UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Corla Scott,

    Plaintiff,

v.                                                                                   Civil Case No. 19-11646

Equifax Information Services, LLC, et. al.,         Sean F. Cox
                                                                                     United States District Court Judge
    Defendants.
_____/

## OPINION & ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff sued several defendants, including People Driven Credit Union ("Credit Union") alleging that they negligently and/or willfully violated the Fair Credit Reporting Act ("FRCA"). Specifically, Scott alleges that Credit Union violated the Act by inaccurately reporting its tradeline on her Equifax credit disclosure with an erroneous monthly payment of $172 because the account is paid and closed and Scott no longer has an obligation to make a monthly payment. Credit Union now moves for summary judgment arguing that the credit report was accurate, and therefore it does not violate FRCA. A zoom hearing was held on September 24, 2020. For the reasons set forth below, the Court grants Credit Union's motion.

### BACKGROUND

Plaintiff, Corla Scott ("Scott") sued Defendants Crest Financial Services, LLC ("Crest Financial"), Equifax Information Services, LLC ("Equifax"), and Credit Union for violating FRCA.

Scott alleges six counts of FRCA violations. She alleges that Credit Union and Crest

Financial are inaccurately reporting their tradelines on Scott's Equifax credit disclosure with an erroneous monthly payment. Counts I and II allege that Crest Financial negligently violated FRCA by failing to conduct proper investigation into Scott's consumer dispute and that Crest Financial failed to review all relevant information in conducting its investigation and failed to direct Equifax from reporting the tradeline with a monthly payment of $0 and status as "paid." Counts III and IV accuse Credit Union of the same conduct. Count V alleges that Equifax prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding her that were false, misleading, and inaccurate. Additionally, Counts V and VI allege that Equifax failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Scott, and once Equifax received Scott's consumer dispute Equifax failed to conduct a reasonable reinvestigation.

Following the close of discovery, Credit Union filed this motion for summary judgment arguing that the credit report was accurate and therefore it does not violate FRCA.

Scott alleges that Credit Union is inaccurately reporting its tradeline on Scott's Equifax credit disclosure with an erroneous scheduled monthly payment. Credit Union is reporting its tradeline on Scott's Equifax credit disclosure with a monthly payment of $172 for an account that is paid and closed. Scott no longer has an obligation to make these monthly payments. Credit Union does not dispute that the account is closed. In fact, Credit Union emphasizes that Scott's Equifax disclosure accurately reflects the account closure along with the zero account balance. On November 27, 2018, Scott obtained her Equifax credit disclosure and noticed the tradelines reporting the $172 monthly payment. On December 13, 2018, Scott submitted a letter to Equifax, disputing

the Credit Union's tradeline. In the letter, she asked Equifax to remove the monthly payment. Equifax forwarded Scott's consumer dispute to Credit Union. On January 30, 2019, Scott obtained her Equifax credit disclosure, which showed that Equifax and Credit Union had not changed the report after receiving her consumer-dispute.

## STANDARD OF REVIEW

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

## ANALYSIS

The purpose of the Fair Credit Reporting Act is "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Boggio v. USAA Federal Sav. Bank* 696 F3d 611, 614 (6th Cir. 2012) (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007)). Section 1681s-2 of FCRA bars "furnishers of information" from "spreading inaccurate consumer-credit information." *Boggio*, 696 F.3d at 614. FRCA imposes liability on both consumer reporting agencies and furnishers of information to those agencies for willful or negligent violations under FCRA. *Nelski v. Trans Union, LLC*, 86 Fed. Appx. 840, 844 (6th Cir. 2004). Under

§1681s–2(c), consumers are precluded "from enforcing the requirement that furnishers, under §1681s–2(a), initially provide complete and accurate consumer information to a CRA." *Boggio*, 696 F.3d at 615. "However, FCRA "expressly creates a private right of action against a furnisher who fails to satisfy one of five duties identified in §1681s–2(b)." *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018) (citing *Boggio*, 969 F.3d at 618.).

To ensure compliance with Section 1681–s of FCRA, a furnisher must provide credit reporting agencies with accurate information about consumers. 15 U.S.C. §1681s–2. However, the Act precludes consumers from enforcing the requirement that furnishers initially provide complete and accurate information to a credit reporting agency. *Boggio*, 696 F.3d at 615 (citing §1681s–2(c)). As such, consumers may only enforce their rights *after* a furnisher has received proper notice of a dispute from a credit reporting agency. *Boggio*, 696 F.3d at 615-616.

When a credit reporting agency forwards consumer disputes to the furnisher, FCRA requires the furnisher to: (1) conduct a reasonable investigation; (2) review any information provided by the consumer reporting agency; (3) report the results of the investigation to the consumer reporting agency; (4) report any inaccuracies to all consumer reporting agencies which may have recieved inaccurate information; and (5) correct any inaccuracies in the information it provides. 15 U.S.C. §1681s–2(b). If the furnisher fails to comply with these requirements, such failure may give rise to a private cause of action. 15 U.S.C. § 1681s–2(c)(2). If a furnisher concludes that its reporting is "inaccurate or incomplete or cannot be verified" after conducting the investigation, it must correct the information by: (1) modify[ing] that item of information; (2) delet[ing] that item of information; or (3) permanently block[ing] the reporting of that item of information. U.S.C. § 1681s–2(c)(2)

While FCRA does not define "accuracy," the Federal Trade Commission defines the term

for consumer credit reporting as:

> Accuracy means that information that a furnisher provides to a consumer reporting agency about an account or other relationship with the consumer correctly: (1) Reflects the terms of of and liability for the account or other relationship; (2) Reflects the consumer's performance and other conduct with respect to the account or other relationship; and (3) Identifies the appropriate consumer.

12 C.F.R. § 41.41(a); *Groff v. Wells Fargo Home Mortg. Inc.*, 108 F. Supp. 3d 537, 540 (E.D. Mich 2015); *see also Hamilton*, 2019 WL 38647442, at 4. The Sixth Circuit has previously held that reporting is accurate for purposes of FCRA as long as it is "technically accurate" or "accurate on its face" even if it might be "misleading or incomplete in some respect." *Dickens v. Trans Union Corp.*, 18 F. App'x. 315, 318 (6th Cir. 2001) (citing *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)). However, this standard has recently been overturned. *Twumasi-Ankrah v. Checker, Inc.*, 954 F.3d 938 (6th Cir. 2020).

While it was not briefed by the parties because Credit Union only made this argument for the first time at the hearing, Credit Union is correct in noting that this "technically accurate" standard recently has been overturned by *Twumasi-Ankrah*. 954 F.3d at 944. *Twumasi-Ankrah* traces the origin of the "technically accurate" standard in the Sixth Circuit and concludes "to the extent that *Dickens* and *Turner* suggested that we apply a technical-accuracy standard in this circuit, that was an error." *Id.* (citing *Dickens*, 18 F. App'x 315 and *Turner v. Experian Info. Sols., Inc.*, No. 17-3795, 2018 WL 3648282 (6th Cir. Mar. 1, 2018).

The *Twumasi-Ankrah* opinion addresses 15 U.S.C. §1681e(b), which is not the section of FRCA at issue in this case. However, in rejecting the technically accurate standard the *Twumasi-Ankrah* court adopted the same standard of accuracy used in *Pittman* and *Boggio* for §1681s–2(b), which is the relevant FRCA section in this case. *Twumasi-Ankrah*, 954 F.3d at 944; *see also*

5

*Pittman*, 901 F.3d at 630; *Boggio*, 696 F.3d at 614. Under that standard, in order for a plaintiff to meet the threshold showing of inaccuracy, the plaintiff must demonstrate that the information provided (1) is false, or (2) that it contains a material omission, or (3) creates materially misleading information to show that the furnisher is spreading inaccurate consumer-credit information. *Pittman*, 901 F.3d at 630 (citing *Boggio*, 696 F.3d at 614).

### I. Accuracy of Credit Union's Reporting

Credit Union argues that the credit reporting was accurate because it reported that the account was closed with a $0 balance. Scott argues that the continued reporting of the scheduled monthly payment on the closed account is patently false. The question is whether Credit Union's reporting of Scott's account status of "closed – paid and closed" and a balance of $0 along with the reported monthly payment of $172 is either (1) false, (2) that it contains a material omission, or (3) creates materially misleading information. *See Pittman*, 901 F.3d at 630 (citing *Boggio*, 696 F.3d at 614). Given that there is no evidence of a material omission, the question becomes whether the report is false or materially misleading.

Scott relies on several unpublished district court cases from Georgia and Arizona, which when faced with similar circumstances held that the reporting of a monthly payment for a closed account was inaccurate.

Whereas Credit Union primarily relies upon a recent opinion from this Court issued by Judge Friedman granting a different credit union's motion for summary judgment on the same facts. *Euring v. Equifax et al*; Civil Action No. 19-CV-11675, 2020 WL 1508344 (E.D. Mich., Mar. 3, 2020). While Judge Friedman did address the "technically accurate" standard, he did not rely on that standard in making his decision. *Id*. at 3. The plaintiff in *Euring* relied on the

*Pittman* standard of accuracy, which same standard the Sixth Circuit adopted in *Twumasi-Ankrah*. *Id*. at 3-4 . *See also Twumasi-Ankrah*, 954 F.3d at 944. Under the *Pittman* standard, "an inaccuracy exists 'where a plaintiff can show that the information provided is false or that it contains a material omission or creates a materially misleading impression.'" *Pittman*, 901 F.3d at 630 (citing *Boggio*, 696 F.3d at 614). Judge Friedman wrote, "Even if the Court applies [the *Pittman*] definition of accuracy, there is nothing false or materially misleading about the "Monthly Payment" information on plaintiff's credit reports in light of the other information that appears on those reports." *Id*. at 8. Due to the account balance listed as $0, the "closed" status, and the payment history diagrams included on the report, Judge Friedman reasoned that the monthly payment was clearly historical information much like the highest balance information. *Id*. at 8-9.

This Court agrees with Judge Friedman's reasoning and conclusion in *Euring*. The report clearly states that the account was closed with a $0 balance. The monthly payment listed as $172 is not inaccurate because it is clearly providing historical information to when the account was open. *Id*. at 9. Despite the listed scheduled monthly payment, any creditor reading the report would conclude that Scott does not owe any more money to Credit Union. Therefore, the report is accurate under the standard used by the Sixth Circuit in *Pittman*, *Boggio*, and *Twumasi-Ankrah* because it (1) is not false, (2) does not omit any material facts, and (3) is not materially misleading. *Pittman*, 901 F.3d at 630; *Boggio*, 696 F.3d at 614; *Twumasi-Ankrah*, 954 F.3d at 944.

## II. Reasonable Investigation Under FCRA

Second, Scott argues that Credit Union failed to conduct a reasonable investigation of her

consumer dispute. Scott argues that the Credit Reporting Resource Guide ("CRRG") demonstrates that Credit Union violated FCRA because the CRRG requires the scheduled monthly payment amount to be reported for the amount due for the current reporting period and reported as zero for accounts that are paid. In reply, Credit Union argues that Scott has failed to prove its investigation violated FCRA because the CRRG is not authoritative as to reasonable investigations to consumer disputes.

Scott is correct that Credit Union had a requirement to conduct a reasonable investigation under FCRA. *Boggio* 696 F.3d at 616. However, Scott does not offer any evidence of Credit Union's investigation or lack thereof. Instead, Scott argues that the CRRG is evidence that Credit Union failed to perform a reasonable investigation of Scott's dispute because Credit Union failed to meet the industry standard as set by the CRRG. According to the CRRG, the scheduled monthly payment amount field should report the amount due for the current reporting period and when the account is paid in full, the amount should be zero filled. Therefore, Scott argues that the industry standard required the Credit Union trade line to be reported as $0.

However, in similar cases, the CRRG has been ruled as inadmissable hearsay and therefore unable to be considered for a motion for summary judgment by other Sixth Circuit courts, including by Judge Friedman in *Euring*. *Cowley v. Equifax Info. Servs., LLC*, No. 18-CV-02846, 2019 WL 5847851 (W.D. Tenn. Nov, 7, 2019); *Euring*, No. 19-CV-11675. Scott argues that the plaintiffs in those cases did not have an opportunity to respond to the hearsay argument, and therefore those courts were incorrect in ruling that the CRRG was hearsay. Instead, Scott argues that the CRRG is admissible under Fed. R. Evid. 803(17)[1] and 807[2]. However, this court does not need to determine

---

[1] Under Fed. R. Evid. 803(17), "[m]arket quotations, lists, directories, or other compilations that are generally relied upon by the public or by persons in particular occupations"

whether it is admissible evidence because the FCRA prohibits the spreading of *inaccurate* consumer information. *See Boggio*, 696 F.3d at 614 (interpreting FCRA §1681s-2); *see also Fulton v. Equifax Info. Servs., LLC,* No. 15-14110, 2016 WL 5661588, at 3 (E.D. Mich. Sept. 30, 2016) (holding that the Fair Debt Collection Practices Act does not require perfect compliance with the industry standards set forth in the CRRG).

Before this Court can reach the question of whether Credit Union conducted a reasonable investigation into Scott's consumer dispute, Scott must first establish that the credit reporting by Credit Union was inaccurate. *Pittman*, 901 F.3d at 629-630.

> As [the Sixth Circuit] has described, 'Section 1681s–2 works in two phases. Initially, furnishers have a duty to provide the CRAs with accurate information about their consumers. Later, a furnisher may be asked by a CRA to respond to disputes about the consumer information provided.' And the requirement meets the goals of FCRA by preventing 'furnishers of information' from spreading *inaccurate* consumer-credit information. **To meet this threshold showing, a plaintiff can show that the information provided is false or that it contains a material omission or creates a materially misleading impression.**

---

are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness.

² Fed. R. Evid. 807 states, "(a) In General. Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:

(1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

(b) Notice. The statement is admissible only if the proponent gives an adverse party reasonable notice of the intent to offer the statement—including its substance and the declarant's name— so that the party has a fair opportunity to meet it. The notice must be provided in writing before the trial or hearing—or in any form during the trial or hearing if the court, for good cause, excuses a lack of earlier notice."

*Pittman*, 901 F.3d at 629-630 (emphasis added) (quoting *Boggio*, 696 F.3d at 614). In other words, before a plaintiff can proceed with a failure to perform a reasonable investigation claim, the plaintiff must establish that there is an inaccuracy in the credit reporting. As established in Section I of this opinion, Scott has not established that the Credit Union's report was inaccurate for the purposes of FCRA. Therefore, this Court need not analyze whether Credit Union's investigation was reasonable under FCRA because Scott cannot succeed on her §1681s–2(b) claim because she has not shown that the report was inaccurate.

## CONCLUSION

For the reasons explained above, IT IS SO ORDERED that Credit Union's motion is GRANTED, and Counts III and IV are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

                                                      s/Sean F. Cox
                                                      Sean F. Cox
                                                      United States District Judge

Dated: October 8, 2020